COOK, Circuit Judge.
Defendant Charles Winslow appeals his conviction of using and occupying National Forest land as part of a group of seventy-five or more persons without a special-use permit in violation of 16 U.S.C. § 551 and 36 C.F.R. §§ 251.50(a), 261.10(k), and 261.1b. Winslow argues that the permit requirement, as applied to him, violates the First Amendment, and that he should not have been convicted because the group did not authorize him to sign a permit application. For the reasons that follow, we affirm.
*704 I. Facts and Procedural History
Winslow is a member of the “Rainbow Family of Living Light” (“Rainbow Family”), an informal group that meets over several days each year, often in a National Forest, to do such things as pray for peace, discuss environmental issues, and socialize. Rainbow Family meetings draw as many as 20,000 people. Winslow was among a group of Rainbow Family members who participated in meetings with a Forest Service officer to discuss site selection and logistics for the Rainbow Family’s 2002 gathering in Ottawa National Forest. Winslow refused to sign a permit application for the event, because, he claimed, he had no authorization from the group, and signing on behalf of the rest of the group would be contrary to the group’s individualist principles.
Because Winslow refused to sign a permit application, the meeting occurred without Forest Service permission. Winslow was then charged with one count of violating the rules and regulations of the National Forest, in violation of 36 C.F.R. § 261.10(k). After a bench trial, a magistrate judge found Winslow guilty. On appeal, the district court upheld the conviction.
II. The Forest Service’s Permit Requirement Is a Valid Time, Place, and Manner Restriction
Under Forest Service rules, groups of seventy-five or more people gathering in a National Forest for a non-commercial purpose must acquire a special use permit in advance. Winslow argues that this requirement violates his First Amendment rights to free speech, to peacefully assemble, and to practice his religion. We find these arguments meritless.
First Amendment jurisprudence allows the government to impose reasonable “time, place, or manner” restrictions on expressive conduct in a public forum. Clark v. Cmty. for Creative Non-Violence, 468 U.S. 288, 293, 104 S.Ct. 3065, 82 L.Ed.2d 221 (1984). Such restrictions are valid, “provided that they are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information.” Id. (citations omitted). Though Winslow disagrees, we view the Forest Service’s permit requirement as a valid time, place, and manner restriction for the following reasons.
First, the rule is content-neutral. It applies to any gathering of seventy-five or more people in a National Forest, whether the gathering intends any speech, and irrespective of topic. See Black v. Arthur, 201 F.3d 1120, 1123 (9th Cir.2000).
Second, the rule is narrowly tailored to serve the significant government interest in “protecting public health and safety, preserving National Forest lands, and allocating space among different groups and uses.” United States v. Nenninger, 351 F.3d 340, 346 (8th Cir.2003). Winslow argues that the Forest Service “had an opportunity to serve any interest it might have claimed,” because he was generally willing to cooperate; just not willing to sign the permit. But even if that were true, “restrictions on the time, place, or manner of protected speech are not invalid simply because there is some imaginable alternative that might be less burdensome on speech.” Ward v. Rock Against Racism, 491 U.S. 781, 797, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989) (citation and internal quotation marks omitted). Further, the permit requirement serves the government’s interests in a way that informal cooperation would not:
[Requiring an individual to sign a special use authorization as a representative *705 of the group is necessary to ensure that the group will be responsible for the actions of its members as a whole, to give the authorization legal effect and to subject the group to the authorization’s terms and conditions.
United States v. Kalb, 234 F.3d 827, 833 (3d Cir.2000) (quoting United States v. Masel, 54 F.Supp.2d 903, 919 (WD.Wis.1999)).
Finally, the rule leaves ample alternative channels for communication.
The regulation does not preclude the use of state or private property for Rainbow Family gatherings. It also does not impinge upon the right of the Rainbow Family to meet on federal land which does not fall within Forest Service jurisdiction or to gather in groups made up of fewer than 75 individuals.

Id.

We thus sanction the Forest Service rule as a valid time, place, and manner restriction presenting no affront to the First Amendment.
III. Winslow’s Putative Lack of Authority to Sign a Permit Application Is Irrelevant
Winslow also contends that he should not have been convicted because he did not have the group’s authority to sign a permit. The undisputed elements of Winslow’s offense are: (1) The defendant was engaged in a non-commercial activity on National Forest Service land; (2) more than seventy-five people were engaged in the non-commercial activity either as participants or spectators; and (3) the group faded to obtain a special use permit in advance of the event. Winslow concedes that he was engaged in a non-commercial activity on National Forest Land; that he was part of a group of seventy-five or more people; and that neither he nor anyone else obtained a special use permit for the event. We need not decide here whether a defendant must also be a group leader or contact person to be convicted under the rule because, given that ample evidence supports the district court’s finding that this defendant acted as a contact person, Winslow himself would satisfy the additional element he seeks to require.
IV. Conclusion
Winslow having presented no grounds to reverse his conviction, we affirm.